**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

REGINA HEISLER, AS THE EXECUTRIX OF THE    \*
SUCCESSION OF FREDERICK P. HEISLER    \*
                                                    \*    No.

versus                                             \*
                                                    \*
KEAN MILLER, LLP, GIROD LOANCO, LLC;    \*    Section
GIROD REO, LLC; VICTORY REAL ESTATE    \*
INVESTMENTS, LLC; VICTORY KENNER, LLC;    \*
JOSEPH P. LOPINTO, III, SHERIFF FOR THE    \*    Magistrate
PARISH OF JEFFERSON; and THEIR RESPECTIVE    \*
LIABILITY CARRIERS AND/OR SURETIES    \*
                                                    \*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**ORIGINAL COMPLAINT**
**TO SET ASIDE FRAUDULENT SALE OF SUCCESSION PROPERTY**
**FOR ENFORCEMENT OF ABA FORMAL OPINION 491**
**FOR INDEPENDENT *NASCO* INVESTIGATION**
**FOR DAMAGES FOR WRONGFUL SEIZURES**
**AND FOR BREACH OF CONTRACT**

       The Petition of Regina Heisler ("Regina Heisler"), as the Executrix the Succession

of Frederick P. Heisler ("the Heisler Succession"), represented by the attorney appointed in

the Last Will and Testament of Frederick P. Heisler ("Heisler" or "Fred Heisler"), with

respect represents:

## I.   JURISDICTION AND VENUE

       1.      This Court has jurisdiction pursuant to 28 U.S.C. § 1334(b) in that this action

is related to Bankruptcy Case 20-11509, *In the Matter of Regina Heisler, pro se Debtor*,

pending in the United States Bankruptcy Court for the Eastern District of Louisiana.

2.      This Court also has jurisdiction pursuant to 28 U.S.C. § 1331, in that the wrongful actions asserted herein violated the constitutional rights of the heirs of the Heisler Succession pursuant to the 1st, 5th and 14th Amendments to the United States Constitution and violated United States Supreme Court precedent at _Caperton v. A.T. Massey Coal Co._, 556 U.S. 868 (2009) and _Henson v. Santander Consumer USA_, 582 U.S. ___ (2017).

3.      This Court also has the "...inherent right..." to _independently_ determine if a fraud has been perpetrated upon the court(s) and to protect the integrity of the judicial process pursuant to _Chambers v. NASCO_, 509 U.S. 32 (1991)[1], specifically as to (i) the issue of Proof of Claim 3 ("POC-3") submitted by Girod LoanCo constituting bankruptcy fraud, (ii) the issue of Kean Miller's contribution to the campaign of Judge Scott U. Schlegel days after Regina Heisler's Peremptory Exception of No Right of Action, (iii) the issue of collusion between Kean Miller and the Jefferson Parish Sheriff's office as to the foreclosure of 4041 Williams Boulevard, and (iv) the issue of sharp litigation tactics intended to "...reduce [an opponent and her lawyer] to a state of exhausted compliance...", _Chambers_, syllabus.

4.      Additional support for a federal court's inherent right to conduct an independent determination if fraud has been perpetrated on the judicial system is found at _NASCO v. Calcasieu Television and Radio_, 124 F.R.D. 120 (W.D. La); 623 F. Supp. 1372, 797 F. 2nd 975 and 894 F. 2nd 696 (5th Cir. 1990), all predecessors to Justice WHITE's

---

[1]      "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates. These powers are governed not by rule or statute, but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases....This historic power of equity to set aside fraudulently begotten judgments, is necessary to the integrity of the courts, for tampering with the administration of justice in [this] manner . . . involves far more than an injury to a single litigant.   It is a wrong against the institutions set up to protect and safeguard the public (internal citations omitted).   _Id._, at 43-44.

landmark decision at 509 U.S. 32 (1991).

5.      Venue is indisputable in the Eastern District of Louisiana; should this case be referred to the bankruptcy court, the Succession will move to withdraw the reference.

## II.   THE SUCCESSION OF FREDERICK P. HEISLER

6.      Fred Heisler, a life-long resident of Orleans Parish, Executed his Last Will and Testament on April 16, 2006, bequeathing a large and solvent estate to those named therein.

7.      Heisler died on April 8, 2007, and his Succession was opened on April 9, 2007, in the Civil District Court for the Parish of Orleans at Docket Number 2007-3249.

8.      Prior to his death, Heisler, a Tulane Law School graduate, practiced law at 844 Baronne Street and engaged in multiple business ventures at that address exclusively.

## III.   PARTIES DEFENDANT

9.      The following parties are made defendants herein:

❏      KEAN MILLER, LLP ("KEAN-MILLER") is a Louisiana Limited Partnership with offices at 908 Poydras Street, New Orleans, Louisiana; a substantial number of wrongful acts took place at the hands of KEAN-MILLER lawyers at the New Orleans branch;

❏      GIROD LOANCO, LLC ("LOANCO") is a Delaware Limited Liability Company which purchased debt from the Federal Deposit Insurance Company ("FDIC") on November 13, 2017 in the form of Promissory Notes which it is seeking to collect; when LOANCO filed pleadings in the Civil District Court for the Parish of Orleans and later in the 24th Judicial District Court for the Parish of Jefferson, it had not qualified to transact business in Louisiana, in violation of La. R.S. 12:1354(A) and *Henson v. Santander Consumer USA*, 582 U.S. ___ (2017);

❑   GIROD REO, LLC, ("REO") is a Delaware Limited Liability Company created on November 25, 2019 in Delaware and qualified in Louisiana on November 26, 2019 after it was deeded 4041 Williams Boulevard ("the Kenner Shopping Center") on October 25, 2019, backdated to October 9, 2019; REO has been collecting $11,250 each month from the Kenner Shopping Center and an approximate $40,000 annual bonus fraudulently taken from the Succession since June, 2019

❑   VICTORY REAL ESTATE INVESTMENTS LLC, ("VICTORY REI") is a Delaware Limited Liability Company located at 240 Brookstone Centre Parkway, Columbus GA. On information and belief, VICTORY REI, or an affiliated entity is successor to Kenner Market Place Partnership ("Kenner MPP") in connection with a Certain Contract of Lease dated November 14, 1985 by and between Frederick P. Heisler and Kenner MPP;

❑   VICTORY KENNER, LLC ("VICTORY KENNER") is a Louisiana Limited Liability Company showing a mailing address of 240 Brookstone Centre Parkway, Columbus GA; on information and belief, VICTORY KENNER or VICTORY REI have collected in excess of $400,000 and distributed it to either Girod LoanCo, Girod REO or Kean-Miller;

❑   JOSEPH P. LOPINTO, III, is the SHERIFF FOR THE PARISH OF JEFFERSON ("Lopinto") who auctioned 4041 Williams Boulevard on October 9, 2019, and — despite having knowledge that the case had been removed to federal court on October 11 — *backdated* the deed to October 9 and recorded same to REO, which did not exist until November 26, 2019;

❑   RESPECTIVE LIABILITY CARRIERS AND/OR SURETIES ("Insurers") are made defendants in the event insurance coverage exists to cover the liability and damages at issue;

10.    The Succession avers that *each* defendant, at different times and in different ways and means, aided and abetted LOANCO, a "...silo structure..." *prohibited* by FDIC

4

policy from purchasing the assets of failed financial institutions as part of the abhorred practice of "Vulture Funding", and is liable jointly, severally and *in solido* for all damages suffered by the Succession.

### IV.   VULTURE FUNDING

11.    Vulture funding is an internationally-repugnant practice, considered by the United Nations Council on Human Rights as vile as human trafficking and the maltreatment of leprosy, a *malum prohibitum* described by House Resolution 2932, (the "Stop VULTURE Funds Act"), as follows, Exhibit A[2]:

**§ 2.   Findings.    The Congress finds the following:**

> (7) So-called "vulture" creditors acquire, either by purchase, assignment, or some other form of transaction, the defaulted obligations of, and sometimes actual court judgments against [vulture debtors]. Vulture creditors usually acquire the debt for the payment of a sum far less than the face value of the defaulted obligation. **They do so for the sole purpose of collecting through litigation, seizure of assets, political pressure, or other means, preferential payment of the defaulted debt on terms and in amounts far in excess of the amount paid by the vulture creditor to acquire the debt.**

12.    The Stop VULTURES Fund Act, H.R. 2932 further provides as follows:

**§ 5. Prohibition on use of United States Courts to further debt profiteering.**

> (a)    In General.—A court in or of the United States may **not issue a summons, subpoena, writ, judgment, attachment, or execution**, in aid of a claim under any theory of law or equity a purpose of which would be furthering [] debt profiteering.

---

2      Although House Resolution 2932 is pending in the Judiciary Committee, it accurately indicates Congressional intent.

13.    On September 2, 2009, the FDIC set rules for bidding on failed banks, which it *violated* in allowing LOANCO to bid on the notes at issue, as set forth in its publication, **Final Statement of Policy on Qualifications for Failed Bank Acquisitions**,  Exhibit B.

14.    The FDIC *specifically* objected to "...silo structures..." because their complex and opaque organizational arrangements  are considered *inappropriate* for acquiring insured depositary institutions, at Federal Register, Vol.74, 45442:

**Summary of the Comments by Issue**

1.   *Bidding Eligibility of "Silo"Structures*.   In the Proposed Policy Statement, the FDIC noted that, because of their often complex and opaque organizational arrangements, so-called "silo" ownership structures would be considered inappropriate vehicles for acquiring insured depository institutions. Some commentators, including a few private equity firms, **endorsed the proposed prohibition of "silo" structures, citing the FDIC's need to ascertain beneficial ownership, clearly identify the parties responsible for making management decisions, and ensure that ownership and control are not separated.**

15.    The FDIC *specifically* objected to entities such as LOANCO, domiciled in the Cayman Islands, a "secrecy jurisdiction" at Federal Register Vol.74, 45447:

**Secrecy Law Jurisdictions**

In response to commenters' request that the FDIC clarify the meaning of"bank secrecy jurisdiction" in the Final Statement, the FDIC provides a definition of bank secrecy jurisdiction as "a country that applies a bank secrecy law that limits U.S. bank regulators from determining compliance with U.S. laws or prevents them from obtaining information on the competence, experience and financial condition of applicants and related parties, **lacks authorization for exchange of information with U.S. regulatory authorities, does not provide for a minimum standard of transparency for financial activities, or permits**

off shore companies to operate shell companies without
substantial activities within the host country.''

16.     The FDIC received comments, published at Federal Register Vol.74, 45444:

The Senators' comment surged the FDIC to eliminate the ability
of investors domiciled in secrecy jurisdictions to invest in failed
U.S. banks and thrifts **based on the history of association
offshore structures have with financial fraud, money
laundering, tax evasion, and other misconduct.**

17.     The Succession avers that the sale of FNBC debt to LOANCO is an absolute

nullity in violation of Louisiana Civil Code Article 7, which provides as follows:

**Art. 7.   Laws for the preservation of the public interest**

Persons may not by their juridical acts derogate from laws
enacted for the protection of the public interest.   Any act in
derogation of such laws is an absolute nullity.

## V.   LOUISIANA DOOR-CLOSING STATUTE

18.     Louisiana Revised Statutes 12:1354(A) provides as follows:

**12:1354.   Transacting business without authority**

A.   No foreign limited liability company transacting business
in this state shall be permitted to present any judicial demand
before any court of this state unless it has been authorized to
transact such business, if required by and as provided in, this
Chapter.   The burden of proof shall rest upon the limited
liability company to establish that it has been so authorized, and
the only legal evidence thereof shall be the certificate of the
secretary of state or a duly authenticated copy thereof.

19.     LOANCO had not sought authorization to transact any business in Louisiana

prior to filing pleadings in the Civil District Court for the Parish of Orleans or the 24th

Judicial District Court for the Parish of Jefferson prior to qualifying in 2020, in stark

violation of *Milburn v. Proctor Trust*, 989 F.Supp. 54 (1945)[3].

20.   LOANCO's suggestion that it is exempt from qualifying does not apply to the OWNER of debt purchased in the "...secondary market...", as decided by the United States Supreme Court in *Henson v. Santander Consumer USA*, 582 U.S. ___ (2017).

## VI.   THE NOTES GIROD HOLDS ARE "...THE FRUITS OF A POISONOUS TREE..." AND MUST BE STRICKEN

21.   By any measure, this case is the *epitome* of the "...fruit of a poisonous tree...", a doctrine so coined by Justice FRANKFURTER in *Nardone v. United States*, 308 U.S. 338 (1939), applying reasoning by Justice Oliver Wendell HOLMES in *Silverthorne Lumber Co. v. United States*, 251 U.S. 385 (1920)[4].

22.   The beginning of the fraud upon the Succession and the use of Regina Heisler as "...nominal borrower F..." in the criminal cases, *United States v. Gibbs*, 20-CR-060 and *United States v. Ryan*, 20-CR-065 began long before the FDIC breached its own rules by selling toxic FNBC debt to LOANCO.

23.   Neither Regina Heisler nor the Heisler Succession nor any Heisler entity received consideration for the notes LOANCO seeks to enforce.

---

3   "More than that, the construction of the statute urged on behalf of the plaintiff would invite and foster the very evil it was intended to prevent.   It would enable foreign corporations to do business in this state in defiance of our laws until some party, perchance, pleaded its noncompliance in an action brought by it to enforce a demand against him....The most efficient way to compel obedience to this statute is to enforce it as it reads, and not amend it by judicial construction so as to enable foreign corporations to avoid the consequences of a noncompliance with its terms by complying after the penalties have been incurred.", *Id.*

4   "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the court, *but that it shall not be used at all*. Once that is established ....the trial judge must give opportunity, however closely confined, to the accused to prove that a substantial portion of the case against him was *a fruit of the poisonous tree.*"

24.    By April 28, 2017, when FNBC was closed by regulators, the notes at issue have been novated, churned and kited beyond recognition, all at the hands of criminals intent on concealing unbridled bank fraud from state and federal regulators.

25.    The creation of LOANCO in early April of 2017 creates an irresistible inference that LOANCO had "...inside information..." about the impending closure.

26.    During the period from April to November, 2017, KEAN-MILLER conducted "...due diligence..." on behalf of LOANCO to advise LOANCO on the purchase of the debt at issue in what was clearly a "...vulture-funding opportunity..." in the making.

27.    The aiding and abetting by KEAN-MILLER is precisely what ABA FORMAL OPINION 491 warned against in April of 2020, articulating Rules of Professional Conduct already in existence.

28.    Neither KEAN-MILLER nor LOANCO have proof to support the toxic paper being used to bilk the Heisler estate out of a potential FIFTEEN MILLION ($15,000,000.00) DOLLARS.

## VII.   A *CHAMBERS v. NASCO* INVESTIGATION BY THE COURT

29.    The "...inherent right..." to determine whether fraud has been practiced on a court (or several courts) belongs to _this_ Court[5]  —  not to the litigants:

> "Moreover, a court has the power to conduct an _independent_ investigation in order to determine whether it has been the victim of fraud, _Universal Oil_, supra, 328 U.S. at 580."

---

[5]    "[i]f a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled,' it may assess attorney's fees against the responsible party, Universal Oil, supra, 328 U.S. at 580....The imposition of sanctions transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself....vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt...."

30.    The task of conducting a meaningful investigation into fraud, however, is far too daunting for either the widow Heisler or the Succession's lawyer.

31.    As the lower courts in *NASCO* recognized, an independent investigation by the court, through an independent officer of the court, is essential, lest the defendants in this case continue to use litigation tactics intended to "...reduce [an opponent and her lawyer] to a state of exhausted compliance...", *Chambers*, syllabus, *supra*, at ¶ 4.

32.    In the case at bar, the Succession moved 24th Judicial District Court Judge Scott U. Schlegel to conduct an independent investigation into the fraud that resulted in the recordation of a Sheriff's Deed to a non-existent entity created by KEAN-MILLER after the case was removed to federal court pursuant to 28 U.S.C. § 1446(d), which provides that:

> "Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal *and the State court shall proceed no further unless and until the case is remanded*."

33.    Because of unconstitutionally-chilling threats by Judge Schlegel to hold Heisler's counsel in criminal contempt of court, it will be *impossible* (without a Court-appointed investigator) to develop the facts necessary to establish if KEAN-MILLER defrauded multiple courts as to the Kenner Shopping Center[6].

---

6    Days after the Succession filed a *Henson* and *Milburn*-based Exception of No Right of Action, KEAN-MILLER paid the Schlegel campaign for Supreme Court justice $2,500 and filed a 146-page pleading (in an executory process case) with a "...new theory of the case...": it was Henry Klein who took the $9.8 million — a *reckless* accusation repeated to the Louisiana 5th Circuit Court of Appeals. A licence to practice law is not a free pass to engage in character assassination or twist the truth beyond recognition.   Lawyers need to pay allegiance to their solemn oath.

34.    Unabashed, KEAN-MILLER portrayed Regina Heisler as a real estate developer who knowingly made millions of dollars worth of loans to salvage two real estate ventures, falsehoods better ferreted out by a court-appointed officer of the court than a sole practitioner with limited resources[7].

### VIII.    FRAUD AND ILL PRACTICES
### AND OFFERS TO GO EASY "...IF YOU STOP FIGHTING..."
### OR "...WHEN YOU DE-CAMP 844 BARONNE..."

35.    Throughout the litigation, KEAN-MILLER predicted that there would be a huge deficiency collectible against Henry Klein as a guarantor under cross-collateral provisions, but that could be eliminated "...if you stop fighting..." or "...when you de-camp 844 Baronne...".

36.    The lethal olive branch included Julie Klein Interiors.

37.    The level of sharp litigation tactics began as soon as the Succession learned that KEAN-MILLER was representing LOANCO, to-wit:

| | | |
|---|---|---|
| 1. | 12/07/17 @  8:34 am: | **Do you have any documentation on the 9 loans?** |
| 2. | 12/07/17 @ 12:04 am: | **You must have some documents I can look at.** |
| 3. | 12/07/17 @  2:49 am: | **Do you have any documentation as to the Heisler loans?** |
| 4. | 12/11/17 @ 10:01 am: | **I really need to see what you have and how much you contend is owed.  I have been chasing this issue for 6 months....Please give me a time to go to David's office to see whatever documentation you have.** |

---

[7]    Undesigned counsel is 77; Regina Heisler is 78 and has been diagnosed with liver cancer.

5.    12/15/17 @ 11:47 am:        It has now been at least 8 months since I began looking for documentation and have received nothing.

6.    12/18/17 @ 9:50 am:         How close are we to getting a look at the histories of these loans?

7.    12/20/17 @ 1:14 pm:         Please get me the credit/debit history on each loan you expect the Succession to pay.

8.    12/20/17 @ 2:34 pm:         This is torture.

9.    12/27/17 @ 3:49 pm:         REGINA DID NOT GET THE MONEY SHOWN.

10.   01/02/18 @ 10:05 am:        Surely you have some supporting documentation by now.  Can you tell me what your client paid?

11.   01/02/18 @ 10:28 am:        Your rights under the pledge agreement are unenforceable because of the FRAUD THAT WAS PRACTICED IN CONNECTION WITH THE First NBC collapse.

12.   01/03/18 @ 9:09 am:         David and Eric:  I would like to come over and see what documentation you have to support your claims.    Once again, I have been seeking this information since April of 2017 and must reach an understanding asap.

13.   01/04/18 @ 1:09 pm:         I have to take some action!!!  Please call me.

14.   01/07/18 @ 8:33 am:         NO I CAN'T IMAGINE.   I can't imagine your client purchasing these loans without documentation

15.   01/09/18 @ 1:14 pm:         I have to do something!!!! If you have no documentation, please say so.  If you have some documentation, please say so.  If you have lousy documentation, please say so.

16.     01/10/18 @  1:11 pm:        Quo Vadimus?

17.     01/20/18 @  1:47 pm:        Do you have paperwork for me to see?

18.     01/29/18 @  6:29 pm:        I received the allonges....I NEED MATCHING
                                    LOAN NUMBERS IN LOANCO'S SYSTEM.

19.     01/30/18 @ 11:40 am:        I need to see what notes the allonges allonge with.

20.     01/30/18 @ 11:53 am:        I repeat my request to talk to Silverstein directly
                                    or to a clerical person who can help me.

21.     01/30/18 @  1:43 pm:        Do you have any actual original notes?  Where are
                                    they physically?

22.     01/31/18 @  8:41 am:        Does David Silverstein or anyone have the original
                                    notes Capital purchased?

23.     02/26/18 @ 10:16 am:        The FDIC has responded to my FOIA request with
                                    nothing.   They have no record of supporting
                                    documentation and (they say) no idea what your
                                    client paid for the loans.

24.     03/03/18 @  5:21 pm:        Does this company exists?  I couldn't find them in
                                    any jurisdiction on earth.

25.     03/05/18 @  1:18 pm:        Does Girod LoanCo exist?  Will David accept
                                    pleadings and/or a subpoena?

26.     03/09/18 @  1:22 pm:        I want to go to Boston to inspect the records on the
                                    loans sold to Girod LoanCo (which I found in
                                    Delaware).  Will you agree?

27.     03/12/18 @  9:07 am:        I requested your confirmation as to my going to
                                    Boston to inspect the records your client has
                                    regarding each loan as to which the Heislers are
                                    involved....TIME IS OF THE ESSENCE...Please
                                    give me a time and date at your client's offices in
                                    Boston to conduct the inspection.

28.    03/12/18 @ 10:29 am:    Do you have THE ORIGINAL OF ANY NOTE?

29.    03/12/18 @ 11:20 am:    I want to go to Boston and look at the loan files, however sparse.

30.    03/14/18 @ 4:31 pm:    I have been trying to see what supporting documentation your client has on the loans allegedly purchased from the FDIC.  YOU HAVE YET TO PROVIDE DOCUMENTATION OR GIVE ME A TIME AND DATE WHEN I CAN GO TO BOSTON TO SEE THE RECORDS.

31.    03/16/18 @ 10:31 am:    I want to make a request for disclosure of the amount CC paid for the Heisler loans.

32.    03/20/18 @ 2:13 pm:    Assume that you were going to file an action to enforce the loans you bought.  What would be your proof?  I need to know aht your client paid for these loans.  Will you tell me?

33.    04/02/18 @ 5:48 pm:    For each loan, give me every piece of paper you have which supports your ownership and your ability to enforce that specific loan.

34.    04/17/18 @ 2:33 pm:    Am I correct that you gave filed NO pleadings in the interpleader?  Are you?

35.    04/19/18 @ 5:26 pm:    It seems inevitable that your client will be required to show me everything it has in the form of documentation for each loan.  Same as the price Girod LoanCo paid.  Why so we have to go through all this rigmarole?

36.    06/20/18 @ 4:49 pm:    For approximately the 20th time, demand is made for CC or Girod LoanCo to provide all documents which support your claim.

37.    06/22/18 @ 2:26 pm:    The concursus has been filed and you will have to reveal by what authority you have any right to any of the collateral, including the cash from the

14

|     |                      | Schwab Account.   Please send me the paperwork that establishes when and how Girod LoanCo owns the rights or the collateral. |
| --- | -------------------- | -------------------------------------------------------------------------------------------------------------------------- |
| 38. | 08/13/18 @ 12:19 pm: | Regina Heisler is 76-years old and your client has tied up her entire estate from November of 2017 and before that, the FDIC |
| 39. | 08/20/18 @ 10:20 am: | Are you at liberty to tell me what Girod paid FDIC for the Heisler/Levy Gardens/HPSouth loand? THIS IS RELEVANT TO OUR RIGHT OF LITIGIOUS REDEMPTION. |
| 40. | 10/28/18 @ 1:26pm:   | I am moving to enroll Michael Bagneris as my counsel and as co-counsel for Levy Gardens. |

## IX.   IMPAIRMENT OF THE RIGHT OF LITIGIOUS REDEMPTION

38.     Long before LOANCO purchased the notes, the Succession filed pleadings noticing all entities, persons and/or future parties that _any_ sale of the alleged loans would be the subject of litigious redemption.

39.     When the identity of LOANCO became known, further pleadings were filed in the Succession case pursuant to Louisiana Civil Code Article 2652, which provides:

> **Art. 2652   Sale of litigious rights.**
>
> When a litigious right is assigned (sold), the debtor may extinguish its obligation by paying to the assignee the price the assignee paid for the assignment, with interest from the time of the assignment.

40.     The Right of Litigious Redemption was raised in pleadings filed October 21, 2017, February 2, 2018, March 5, 2018, April 19, 2018, June 15, 2018, June 27, 2018 and August 22, 2018.

41.     Because KEAN-MILLER _refused_ to provide the price LOANCO paid, their rights are extinguished by equitable estoppel.

15

## X.   ABA FORMAL OPINION 491 AND RULE 11

42.     On April 29, 2020, the American Bar Association published Formal Opinion 491, which arguably has the force of substantive law.

41.     Although no court to date has interpreted ABA 491, this Court is respectfully urged to apply the precepts as part of its "...inherent power..." to ensure the integrity of its processes.

42.     In that regard, ABA 491 has elevated the duty when it comes to "...vulture funding...", stating that:

> "[w]here a situation shows a 'high probability' that the client is seeking the lawyer's services in a transaction to further criminal or fraudulent activity, lawyers have an affirmative duty under Rule 1.2(d) to ask their client for additional information to avoid assisting such activity.  Failure to make a reasonable inquiry is 'willful blindness' and is punishable under the rules.  If a client refuses to answer the lawyer's questions, the lawyer is to 'remonstrate with the client', and if that does not lead to additional information, decline the representation or withdraw."

43.     On multiple occasions, the Succession and its counsel sent Rule 11 requests to KEAN-MILLER to dismiss its claims against a victim of the fraud that began long before FNBC was closed.

44.     The Succession and its counsel are prepared to provide the evidence in a *Chambers v. NASCO* independent setting, but aver that absent this Court's wielding its "...inherent rights...", the defendants are certain to reduce Regina Heisler and her beleaguered lawyer to a "...state of exhausted compliance...", *Id.*

## XI.   COUNT ONE: CLAWING BACK THE KENNER SHOPPING CENTER

45.   Notwithstanding what the United States Supreme Court may do at Docket 20-1361[8], the Succession's very valuable Kenner Shopping Center must be clawed back.

46.   Various requests to the Chapter 7 trustee have been rejected and the level of fraud in connection with the October 9, 2019 auction to REO, a vulture created by KEAN-MILLER after-the-fact cannot be reconstructed in Jefferson Parish, where Judge Schlegel has been compromised beyond cavil.

47.   The manifest damages to the Succession stem from a Contract of Lease from Frederick P. Heisler to Kenner Market Place Partnership dated November 14th, 1985, presently paying $11,250.00 per month for the creation of a Planned Unit Development ("PUD") for a term of sixty (60) years.

48.   Defendants VICTORY REI and VICTORY KENNER have breached the agreement, allegedly because the Succession no longer owns the Kenner shopping Center, anchored by a ROUSE'S Supermarket.

49.   Defendants VICTORY REI and VICTORY KENNER have refuse to account to the Succession since the fraudulent foreclosure and, on information and belief, have paid the rentals to either KEAN-MILLER or REO, highly-likely sent to the Cayman Islands where the funds are neither traceable or subject to execution by any United States Court of law.

50.   Defendant LOPINTO, Sheriff of Jefferson Parish, illegally caused a _procès-verbal_ deed to be executed after the case was removed to federal court and recorded it in the Public Records on October 26, 2019 in favor of REO, which did not exist at the time and which offices at 908 Poydras Street at the New Orleans Law Offices of KEAN-MILLER.

---

8     On April 7, 2021, the United States Supreme Court set Regina Heisler's Petition for Certiorari for DISTRIBUTION to the Justices on April 23, 2021, twenty-eight (28) days after docketing.

## XII.  COUNT TWO: DAMAGES *IN SOLIDO* BY ALL DEFENDANTS

51.    All defendants have participated in the wrongful seizures of property belonging to the Succession, or have engaged in breaches of duty owed to the Succession and the heirs of Frederick P. Heisler pursuant to the inherent duty of good-faith dealing, as described by the late Alvin B. Rubin in *Makofsky v. Cunningham*, 576 F.2d 1223 (5th Cir. 1978):

> "Good faith in the performance of obligations is an integral part of the fabric of Louisiana's law of obligations and consideration of this duty, interwoven with more literal adherence to the rules of civilian doctrine, leads us to conclude that the district court, was correct in its application [of these precepts]."

52.    As the purchaser of FNBC notes by the Heisler interests, albeit only $600,000 at the time the bank collapsed, LOANCO "...stepped into the shoes..." of Heisler's bankers ad owed the Succession and its heirs a duty of good faith and fair dealing.

53.    Rather, LOANCO purchased "...the fruits of a very poisonous tree..." and bloated the debt from $600,000 to $9,800,000.00, soon to be $15,000,000.00 in the ruthless manner that is the hallmark of vulture funding.

54.    Because LOANCO can't be found and is a Delaware Titling Trust[9], the Succession can only collect from the architects of this brutal fleecing: KEAN-MILLER and/or the insurers and sureties of all defendants.

## XIII.  RELIEF REQUESTED

55.    Regina Heisler, as the Executrix the Succession of Frederick P. Heisler, responding to her duty to protect the assets of the Succession and the interests of all heirs, requests that the Court conduct an *independent* investigation, pursuant to *Chambers v. NASCO* and its progeny, as to the level of fraud upon the courts perpetrated by the

---

9    The moniker is what those trusts do: change title to collateral to avoid execution.

defendants, in different ways and means, aided and abetted by KEAN-MILLER in stark violation of ABA FORMAL OPINION 491.

56.    Upon conclusion of a threshold *Chambers v. NASCO* investigation, *vel non*, Regina Heisler prays that all damages as may be shown at trial be awarded to the Succession, its heirs and all those impacted by the ruthlessness of the vulture funding at hand.

57.    As may further be shown or developed, Regina Heisler prays for the enforcement of law and equity.

Respectfully submitted,


*/s/   Henry L. Klein*
Henry L. Klein (7440)
844 Baronne Street
New Orleans, LA 70113
504-439-0488
henryklein44@gmail.com